**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| JOSHUA A. RODRIGUEZ,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CASE NO. 3:25-CV-02518-JRK<br><br>DISTRICT JUDGE JAMES R. KNEPP, II<br><br>MAGISTRATE JUDGE AMANDA M. KNAPP<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff Joshua Rodriguez seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI"). (ECF Doc. 1.) This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **VACATED** and **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation. On remand, the ALJ should clearly articulate the rationale supporting her Step Three findings, specifically including a finding as to whether Mr. Rodriguez's migraine headaches medically equaled a listing, and should ensure that those findings are supported by substantial evidence.

## I. Procedural History

Mr. Rodriguez filed his SSI application on April 24, 2024, alleging a disability onset date of March 12, 2019. (Tr. 106.) He alleged disability due to depression, multiple sclerosis

("MS"), blind or low vision, morbidly obese, hypertension, acid reflux, and muscle pain. (Tr. 96.) His application was denied initially and upon reconsideration (Tr. 106-07), and he requested a hearing (Tr. 169). After conducting a hearing (Tr. 38-65), an Administrative Law Judge ("ALJ") issued a decision denying his application on July 18, 2025, finding him not disabled within the meaning of the Social Security Act since the date his application was filed (Tr. 17-31). On September 23, 2025, the Appeals Council denied Mr. Rodriguez's request to review the ALJ decision, making that decision the final decision of the Commissioner. (Tr. 1-6.)

Mr. Rodriguez filed the instant Complaint on November 19, 2025 (ECF Doc. 1), and the matter is fully briefed (ECF Docs. 8, 9). Mr. Rodriguez raises four assignments of error:

1) The ALJ erred at Step Three of the sequential evaluation when she failed to properly evaluate Plaintiff's migraine headaches and find that Plaintiff equaled Listing 11.02B.

2) The ALJ erred at Step Three of the sequential evaluation when she failed to comply with the relevant Social Security Rulings, 19-2p and 96-8p, and find that the combination of Plaintiff's obesity and additional impairments equaled a listing.

3) At Step Five of the sequential evaluation, the ALJ committed harmful error when she found that there were a sufficient number of jobs Plaintiff could perform in the national economy.

4) The ALJ erred as when formulating the RFC, she failed to incorporate the limitations set forth by the post-hearing consultative examiner.

(ECF Doc. 8, p. 1.)

## II. Evidence

### A. Personal, Educational, and Vocational Evidence

Mr. Rodriguez was born in 1990 and was 28 years old on the alleged disability onset date, making him a younger individual under Social Security regulations. (Tr. 96.) He has at least a high school education. (Tr. 258.) He has not worked since March 12, 2019, the alleged onset date. (Tr. 96.)

### B. Medical Evidence

#### 1. Relevant Treatment History[1]

On January 23, 2024, Mr. Rodriguez attended an appointment with Faizan Hafeez, M.D., at NOW Neurology and Headache Clinic. (Tr. 416-19.) It was noted that he had been diagnosed with multiple sclerosis ("MS") in 2017, but his symptoms had gradually improved on Dimethyltryptamine ("DMT"). (Tr. 416.) Mr. Rodriguez reported occasional hand paresthesia, fatigue, and severe headaches occurring 10 to 12 days a month and lasting 4 to 12 hours on average. (*Id.*) His headaches were accompanied by photophobia, phonophobia, nausea, lightheadedness, neck pain, fatigue, and difficulty concentrating. (*Id.*) He was not taking headache or migraine medication but had tried Botox injections once with partial relief. (*Id.*) On neurological examination, Mr. Rodriguez was well appearing and alert, with calm behavior, intact speech and comprehension, full orientation, full strength and reflexes, and normal sensory findings, cranial nerves, and gait. (Tr. 418-19.) Dr. Hafeez diagnosed MS, obesity, and chronic migraine without aura, not intractable, without status migrainosus. (Tr. 419.) He prescribed Topiramate, naproxen, and Maxalt, continued Tecfidera, baclofen, and gabapentin, and ordered MRIs of the brain and cervical spine. (*Id.*)

On April 24, 2024, Mr. Rodriguez attended a blood pressure check appointment with Jennifer Varga, APRN-CNP, at Promedica Wellness Center. (Tr. 425-427.) He reported ambulation and mobility issues due to MS. (Tr. 425.) On examination, his weight was 502 pounds, his BMI was 70.14, and edema was noted in both lower extremities; his examination findings were otherwise normal. (Tr. 426.)

[1] While the ALJ found severe physical and mental health impairments (Tr. 20), Mr. Rodriguez's arguments are based on his physical RFC (ECF Doc. 8). The Court's summary is generally limited to the evidence cited in the parties' briefs that is from the disability period and relevant to the legal and factual issues before the Court.

On April 25, 2024, Mr. Rodriguez returned to see Dr. Hafeez. (Tr. 696-99.) He continued to report daily headaches and occasional hand paresthesia but denied new neurological symptoms or MS exacerbation. (Tr. 697.) His neurological examination was unchanged from the January visit. (Tr. 698-99.) Dr. Hafeez continued all medications. (Tr. 699.)

Mr. Rodriguez followed up with Dr. Hafeez on September 24, 2024. (Tr. 762-66.) He continued to report fatigue, left hand paresthesia, and daily headaches that were severe and disabling 10 to 12 days a month. (Tr. 762.) His symptoms were otherwise stable on medication (*id.*), and his neurological examination was normal throughout (Tr. 764). Dr. Hafeez performed cranial nerve blocks (Tr. 765), increased Topiramate, continued all other medications, and recommended further cranial nerve blocks or Botox injections to treat migraines (Tr. 766).

On January 15, 2025, Mr. Rodriguez attended an appointment with CNP Varga. (Tr. 785-88.) He reported chronic pain and flairs of MS that caused overall pain, immobility, pressure headaches, left arm and shoulder pain with weakness, and new neck pain. (*Id.*) On physical examination, he weighed 234.5 kg and had a BMI of 72.11, but his pulmonary effort, heart rate and rhythm, and range of motion were normal. (Tr. 786.) CNP Vargas also noted a gait problem. (*Id.*) She assessed neck pain, left arm weakness, chronic left shoulder pain, and neuropathy, ordered an MRI and x-ray of the cervical spine, and prescribed celecoxib, gabapentin, Nifedipine CC, pantoprazole, and montelukast. (Tr. 787.)

On June 10, 2025, Mr. Rodriguez attended a post-hearing consultative examination with Donald Terrace, NP. (Tr. 806-811.) He reported a history of left shoulder pain, headaches, and weakness and tingling in his arms. (Tr. 807.) He weighed 517 pounds with a BMI of 72. (Tr. 806.) His physical examination showed: no acute distress; normal gait and stance with no assistive device; inability to squat or walk on heels or toes; ability to get up from a chair and on

and off the examination table without difficulty; no sensory deficits; full or nearly full strength in all extremities; no joint deformities; 4/5 grip strength; positive straight leg test bilaterally; and normal range of motion except for moderately reduced hip and knee flexion.[2] (Tr. 808-16.) NP Terrace diagnosed depression, MS, blind or low vision, morbid obesity, hypertension, acid reflux, and muscle pain. (Tr. 809-10.)

**2. Opinion Evidence**

**i. Consultative Examiner**

On June 10, 2025, NP Terrace completed an Internal Medicine Evaluation and Medical Source Statement ("MSS"). (Tr. 806-811, 832-837.) In the Internal Medicine Evaluation, he opined that Mr. Rodriquez could: lift and carry up to 20 pounds with no limitation and up to and over 50 pounds occasionally; stand and walk for one hour a day and sit for four hours a day; occasionally handle and finger; frequently push and pull; occasionally stoop, kneel, crouch, crawl, and climb stairs and ladders; frequently balance; occasionally drive; and frequently be exposed to unprotected heights. (Tr. 836.)

On the MSS, NP Terrace opined that Mr. Rodriguez could: frequently lift up to 100 pounds and continuously lift up to 10 pounds; occasionally carry up to 100 pounds, frequently carry up to 20 pounds, and continuously carry up to 10 pounds; stand/walk for 10 minutes and sit for 30 minutes at a time; stand/walk for two hours and sit for five hours total in an eight-hour workday; frequently push/pull with the right hand and occasionally push/pull with the left hand; occasionally balance, stoop, kneel, crouch, crawl, and climb stairs, ramps, ladders, and scaffolds; occasionally be exposed to unprotected heights, moving mechanical parts, and operating a motor

[2] While NP Terrace documented 4/5 strength in the wrist and lower extremities and moderately reduced hip and knee flexion on the report forms (Tr. 838, 841), his summary of the examination findings noted that strength and range of motion were normal without qualification (Tr. 809).

vehicle; frequently be exposed to humidity, wetness, extreme temperatures, and vibrations; and tolerate up to loud noise. (Tr. 843-47.)

**ii. State Agency Medical Consultants**

On July 15, 2024, state agency medical consultant Diane Manos, M.D., conducted a physical Residual Functional Capacity ("RFC") assessment. (Tr. 101-02.) She opined that Mr. Rodriguez could: occasionally lift/carry up to 20 pounds and frequently lift/carry up to 10 pounds; stand/walk for four hours and sit for six hours in an eight-hour workday; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl, and climb ramps or stairs; frequently balance; and never be exposed to hazards such as unprotected heights, heavy machinery, and commercial driving. (*Id.*) On October 28, 2024, state agency medical consultant Abraham Mikalov, M.D., affirmed Dr. Manos's findings on reconsideration. (Tr. 113-15.)

**C. Hearing Testimony**

At the telephonic hearing on May 20, 2025, Mr. Rodriguez testified in response to questioning by the ALJ and his attorney. (Tr. 43-61.) A Vocational Expert ("VE") also testified. (Tr. 61-64.) The VE testified that a hypothetical individual of Plaintiff's age, education, and work experience, with the functional limitations described in the ALJ's RFC determination could perform representative positions in the national economy, including final assembler, touch up screener, or lampshade assembler. (Tr. 62.)

**III. Standard for Disability**

Under the Social Security Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).

To make a determination of disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations, summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If the claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If the claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if the claimant's impairment prevents him from doing past relevant work. If the claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If the claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC and vocational factors to perform other work available in the national economy. *Id.*

## IV. Law & Analysis

### A. Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence.").

When assessing whether there is substantial evidence to support the ALJ's decision, the Court may consider evidence not referenced by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Hum. Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Hum. Servs.*, 889 F.2d 679, 681 (6th Cir. 1989)). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). "'The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Blakley*, 581 F.3d at 406 (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)) (alteration in original). Therefore, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if substantial evidence supports a claimant's position, a court cannot overturn the

Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

Although an ALJ decision may be supported by substantial evidence, the Sixth Circuit has explained that the "'decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004))). A decision will also not be upheld where the Commissioner's reasoning does not "build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

**A. First Assignment of Error: The ALJ Failed to Adequately Evaluate Plaintiff's Migraines at Step Three of the Sequential Analysis**

In his first assignment of error, Mr. Rodriguez argues that the ALJ erred when she failed to evaluate his migraine headaches at Step Three of the sequential analysis.[3] (ECF Doc. 8, pp. 8-12.) More specifically, he asserts that the ALJ did not analyze his migraine headaches under SSR 19-4p, and in fact "[t]he ALJ's Step Three analysis of his migraines was non-existent." (*Id.* at pp. 8, 11.) In a brief response, the Commissioner argues that Mr. Rodriguez's Step Three arguments must fail because he has not shown that the record contains a finding of medical equivalence by a medical source as contemplated in SSR 17-2p. (ECF Doc. 9, pp. 6-7.)

---

[3] Despite captioning his first assignment of error as a failure to properly consider medical equivalence at Step Three (*see* ECF Doc. 8, p. 8), Plaintiff asserts in passing that the ALJ also "erred when she failed to discuss any effects the headaches would have on Plaintiff's ability to engage in substantial gainful activity on a full time and sustained basis" and that this failure meant "the RFC was not supported by substantial evidence" (*id.* at p. 11). The undersigned finds this conclusory argument inadequately developed and therefore waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal citations omitted) (alterations in original).

At Step Three of the disability evaluation, a claimant is disabled if his impairment meets or equals one of the listings in the Listing of Impairments. *See* 20 C.F.R. § 416.920(a)(4)(iii). "Each listing specifies 'the objective medical and other findings needed to satisfy the criteria of that listing.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting 20 C.F.R. § 416.925(c)(3)). The claimant bears the burden to prove that his condition meets or equals a listing. *See* 20 C.F.R. § 404.1520(d); *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)). To do so, he "must present specific medical findings that satisfy the various tests listed in the description of the applicable impairment or present medical evidence which describes how the impairment has such equivalency." *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004).

While there is no listing for headaches, Social Security Ruling ("SSR") 19-4p provides guidance on how "primary headache disorders" like migraines are evaluated, explaining: "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." SSR 19-4p, *Evaluating Cases Involving Primary Headache Disorders*, 84 Fed. Reg. 44667, 44667-71 (Aug 26, 2019). Thus, while a claimant cannot "meet" a listing for headaches—as no such listing exists—migraine headaches may "medically equal" Listing 11.02 for epilepsy. *Id.*

Here, although the ALJ identified migraine headaches as a severe impairment at Step Two (Tr. 20), she did not explicitly consider whether that impairment met or medically equaled a listing at Step Three, nor did she reference SSR 19-4p or Listing 11.02 in her Step Three analysis (Tr. 20-23). At best, the ALJ made the following general findings:

> While the claimant's impairments are severe, the record does not specifically establish that the claimant has an impairment that medically meets or equals the

> severity requirements of any listed impairment. The undersigned has examined and considered all listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, with specific attention to Listings 1.15, 1.18, 11.09, 11.14, 12.04, and 12.06.

(Tr. 20 (emphasis added).)

The mere fact that the ALJ did not reference migraines, SSR 19-4p, or Listing 11.02 at Step Three is not necessarily reversible error, as "neither the listings nor the Sixth Circuit require the ALJ to 'address every listing' or 'to discuss listings that the applicant clearly does not meet.'" *Smith-Johnson v. Comm'r of Soc. Sec.,* 579 F. App'x 426, 432 (6th Cir. 2014) (quoting *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013)). Instead, the Sixth Circuit explains that listings should be discussed "where the record raises 'a substantial question as to whether [one] could qualify as disabled' under a listing." *Smith-Johnson,* 579 F. App'x at 432 (citing *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)) (alteration in original).

To show a "substantial question" as to whether a listing applies, "[a] claimant must do more than point to evidence on which the ALJ could have based his finding." *Id.* (citing *Sheeks*, 544 F. App'x at 641-42); *see also Sheeks*, 544 F. App'x at 642 (explaining that establishing a "substantial question" requires more than "a mere toehold in the record on an essential element of the listing"). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal *every requirement* of the listing." *Id.* (emphasis added). "Absent such evidence," the Sixth Circuit has found that an ALJ "does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433. The undersigned must therefore consider whether Mr. Rodriguez has identified sufficient evidence to establish a "substantial question" as to whether his migraines "reasonably could equal" every requirement of Listing 11.02B.

SSR 19-4p addresses the application of Listing 11.02B to headaches as follows:

> Paragraph B of listing 11.02 requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment.

> To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an AMS of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 84 Fed. Reg. at 44671 (emphasis added). Thus, the requirements to equal Listing 11.02B include: (1) a frequency of once a week for three consecutive months; (2) adherence to prescribed treatment; (3) a detailed description of a typical headache event by an acceptable medical source; and (4) consideration of side effects of treatment and functional limitations. *Id.*

In support of a medical equivalence finding in this case, Mr. Rodriguez primarily cites three treatment visits with the Neurology & Headache Clinics of NWO in January, April, and September 2024. (ECF Doc. 8, p. 9; *see* Tr. 416-19 (1/23/24), 696-99 (4/25/24), 762-66 (9/24/24).) The January 2024 notes indicate Mr. Rodriguez continued to report "frequent headaches" that were "still recurring daily, with at least 2-3 moderate/severe headaches per week" and "severe disabling headaches" during "[a]t least 10-12 days of the month." (Tr. 416.) The notes were prepared by Faizan Hafeez, M.D., an acceptable medical source, and contained a detailed description of a typical headache event, including average duration, average intensity, the nature of associated pain, and associated phenomena that included "photo and phono phobia, nausea, lightheadedness, neck pain, fatigue[,] and difficulty concentrating." (Tr. 416, 419.) The notes also document aggravating factors that include "bright lights/ sunlight, bending, [n]eck pain, working for some time[,] and stress" (Tr. 416) and alleviating factors that include "sleep, heat, silence, triptans[,] and tylenol" (Tr. 417). Mr. Rodriguez was started on Topiramate "[f]or

headache / migraine prevention." (Tr. 419.) When Mr. Rodriguez returned to Dr. Hafeez in April 2024, he denied "new neurological or systemic symptoms" and reported "no symptoms suggestive of [an] MS exacerbation," but with no changes in his reported daily headache episodes or migraine prevention medications. (Tr. 696-97, 699.) When he returned to Dr. Hafeez in September 2024, he was again noted to be "stable" with no "new symptoms suggestive of MS exacerbation," but with continued reports of daily headache episodes with "at least 2-3 moderate/severe headaches per week" and "severe disabling headaches" during "[a]t least 10-12 days of the month." (Tr. 762-63.) The record reflects that he continued to take Topiramate "[f]or headache / migraine prevention" (Tr. 766) but also received nerve blocks for a headache with a reported intensity of 8/10 before the procedure and an intensity of 0/10 afterward (Tr. 765). Mr. Rodriguez also highlights the ALJ's acknowledgement of his testimony at the administrative hearing that "he has a migraine constantly" and "had a Botox injection about three weeks ago that provided no improvement." (Tr. 24; *see* Tr. 48-49; ECF Doc. 8, p. 10.)

Having considered the evidence outlined above, the undersigned concludes that Mr. Rodriguez has met his burden to raise a "substantial question" as to whether he could qualify as disabled under Listing 11.02B and SSR 19-4p by "point[ing] to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Smith-Johnson,* 579 F. App'x at 432. As outlined above, he has identified evidence that could reasonably support a finding that he reported severe migraines of a frequency consistent with Listing 11.02B, occurring for a period of at least nine months despite adherence to prescribed treatment, supported by a detailed description of a typical migraine by an acceptable medical source, and with evidence of functional limitations relating to his migraine symptoms.

Where—as here—the record raises a "substantial question" as to whether the claimant meets or equals a listing, the Sixth Circuit has explained that the ALJ must "evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Neace v. Comm'r of Soc. Sec.*, No. 22-5090, 2022 WL 20742559, at *3 (6th Cir. Sept. 14, 2022) (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). The explanation is needed to show that the Step Three findings were supported by substantial evidence. *Id.* But the Sixth Circuit has also explained that an ALJ need "not spell[] out every consideration that went into the step three determination," *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006), and that substantial evidence may be established where "the ALJ made sufficient factual findings elsewhere in [her] decision to support [her] conclusion at step three," *Forrest v. Comm'r of Soc*. Sec., 591 F. App'x 359, 366 (6th Cir. 2014) (citations omitted). The undersigned will therefore consider whether the ALJ's analysis of the records relating to migraine headaches at other steps of the sequential analysis identified substantial evidence to support a finding that Mr. Rodriguez did not medically equal Listing 11.02B.

Here, the ALJ discussed the following evidence at Step Four: Mr. Rodriguez's testimony that he had constant migraines (Tr. 24); his report to Dr. Hafeez in January 2024 that he had "two to three headaches per week and 10 to 12 per month that were moderate to severe and lasted 4 to 12 hours" (Tr. 25 (citing Tr. 416-19)); his ongoing reports of headaches to providers in April 2024, September 2024, and January 2025 (*id.* (citing Tr. 696, 764, 785)); a 2025 brain MRI that showed no significant interval change, a stable lesion that may reflect a demyelinating plaque in the context of MS, and no new lesions or abnormal enhancement (*id.* (citing Tr. 800)); his report of prior use of Botox "once with partial reduction" (*id.* (citing Tr. 416); and his January 2024 prescription for Topiramate, which was continued in April and September 2024, and nerve block

injections in September 2024 (*id.* (citing Tr. 419, 698-99, 765-66)). She also discussed the medical opinions of the consultative medical examiner and state agency medical consultants, finding them not persuasive and partially persuasive, respectively; but her analyses of these medical opinions did not address Mr. Rodriguez's migraine headaches. (Tr. 26-27, 28-29.) The ALJ also explained why she found Mr. Rodriguez's subjective complaints "somewhat inconsistent" with the medical evidence of record, with specific attention to Mr. Rodriguez's symptoms from MS, use of a cane, and elevated BMI, as follows:

> [T]he severity of the claimant's <u>symptoms from MS</u> that he testified to, such as that he typically spends each day laying in bed doing nothing, was not consistent with the treating neurologist's medical records as the claimant was consistently continued on the same medication regimen; updated imaging showed no significant changes and stable findings; and there were no remarks of the reported limitations []. The neurology follow ups stated the claimant had been stable since the last visit, there were no new symptoms, and no symptoms suggestive of MS exacerbation []. The claimant further testified to <u>use of a cane for ambulation and to help him stand from a sitting position</u> due to difficulty doing so, but there was no documented medical evidence that a cane was prescribed or deemed medically necessary, and there were no remarks in the treatment notes that the claimant was observed using a cane or other assistive device. The consultative examiner stated the claimant did not use or require an ambulatory device []. Examinations by his treating medical providers noted normal gait, normal motor exam, full strength in the bilateral upper and lower extremities, and normal range of motion []. Moreover, despite the claimant's <u>elevated BMI</u>, the records show normal gait, normal strength, and no atrophy. . . . the record as a whole does not demonstrate the existence of limitations of such severity as to have precluded him from performing all work on a regular and continuing basis at any time from the alleged onset date of disability.

(Tr. 29-30 (emphasis added) (citations omitted).)

Although the ALJ's factual description of the evidence matches the underlying records, she does not provide a further analysis of the records sufficient to establish substantial evidence to "support [her] conclusion at step three" that Mr. Rodriguez did not medically equal Listing 11.02B. *Forrest*, 591 F. App'x at 366. After summarizing medical records from a headache clinic that arguably show migraine headaches "occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment," SSR 19-4p, 84 Fed. Reg. at

44671, the ALJ did not explain how she determined—if indeed she did so—that the records do not support a finding that Mr. Rodriguez's migraine headaches medically equal Listing 11.02B. Even her analysis of "somewhat inconsistent" subjective complaints does not directly address the complaints of migraine headaches, instead highlighting evidence the ALJ found inconsistent with complaints of MS symptoms/exacerbations, a need for a cane, and the impact of obesity. Thus, even considering the ALJ's Step Four analysis, the undersigned finds the ALJ failed to "actually evaluate the evidence" relating to migraine headaches, compare the evidence to the requirements of SSR 19-4p and Listing 11.02B, and "give an explained conclusion" sufficient "to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416; *Neace*, 2022 WL 20742559, at *3 (quoting *Reynolds*). Without that analysis, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Reynolds*, 424 F. App'x at 416.

The Commissioner does not argue that Plaintiff failed to raise a "substantial question" regarding whether his migraines medically equal Listing 11.02B, nor does he assert that the ALJ's discussion of migraines at Step Four supports a finding that Plaintiff did not medically equal the listing. Instead, the Commissioner argues simply that Plaintiff has not shown error at Step Three because the record does not contain evidence from a medical source that supports a finding of medical equivalence as contemplated in SSR 17-2p. (ECF Doc. 9, p. 7.)

Under SSR 17-2p, the record "must" contain one of the following before an ALJ may find that an impairment medically equals a listing:

1. A prior administrative medical finding from [a state agency medical consultant] or [psychological consultant] from the initial or reconsideration adjudication levels supporting the medical equivalence finding, or

2. [Medical expert] evidence, which may include testimony or written responses to interrogatories, obtained at the hearings level supporting the medical equivalence finding, or

> 3. A report from the [Appeals Council]'s medical support staff supporting the medical equivalence finding.

SSR 17-2p, *Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process to Make Findings about Medical Equivalence*, 82 Fed. Reg. 15263, 15265 (Mar. 27, 2017). In a hearing-level decision, this means that an ALJ may only find medical equivalence if the record contains a medical opinion from a state agency consultant or a medical expert that support a finding of medical equivalence. *Id.* Because the record does not contain a finding of medical equivalence under Listing 11.02B, in either the state agency or the consultative examining opinions, the Commissioner argues that Mr. Rodriguez's Step Three arguments must fail. (ECF Doc. 9, p. 7.)

But SSR 17-2p contemplates that an ALJ may need to obtain medical expert evidence regarding medical equivalence before finding "that the individual's impairment[] does not medically equal a listed impairment." SSR 17-2p, 82 Fed. Reg. at 15265. Specifically, the ruling explains that an ALJ is "not require[d]" to obtain medical expert evidence before a Step Three finding "if" the ALJ believes the evidence "does not reasonably support a finding that the individual's impairment[] medically equals a listed impairment[.]" *Id.* Here, because the ALJ did not explicitly discuss or consider Mr. Rodriguez's migraine headaches, SSR 19-4p, or Listing 11.02B in her Step Three analysis (Tr. 20), the undersigned has no grounds to presume the ALJ "believe[d] the evidence d[id] not reasonably support a finding that [Mr. Rodriguez]'s [headache] impairment[] medically equaled a listed impairment[.]" 82 Fed. Reg. at 15265. There is accordingly no basis to presume that the ALJ was "not require[d]" to obtain medical expert evidence before assessing whether the migraine headaches equaled Listing 11.02B.

For the reasons set forth above, the undersigned concludes that the ALJ erred at Step Three of the sequential analysis when she found Mr. Rodriguez's impairments did not

"medically meet or equal[] the severity requirements of any listed impairment" (Tr. 20) without explicitly evaluating the evidence relating to his migraine headaches, comparing that evidence to the requirements of Listing 11.02B and SSR 19-4p, and explaining her conclusion regarding medical equivalence in a manner that is sufficient to facilitate meaningful judicial review. Without this analysis, the ALJ's Step Three findings lacked the support of substantial evidence. Accordingly, the undersigned finds the first assignment of error is meritorious and recommends that the Court remand the matter for further proceedings consistent with this finding.

**B. The Second, Third, and Fourth Assignments of Error Lack Merit**

Because the undersigned finds the first assignment of error to be meritorious and recommends remand, this Court need not address Mr. Rodriguez's second, third, or fourth assignments of error. Nevertheless, the undersigned briefly addresses those issues below.

In his second assignment of error, Mr. Rodriguez argues that the ALJ failed to properly evaluate his obesity in compliance with SSR 19-2p[4] and SSR 96-8p.[5] (ECF Doc. 8, pp. 12-17.) In support, Mr. Rodriguez essentially copies and pastes his earlier statement of facts (*compare id.* at pp. 13-15 *with id.* at pp. 2-5) and makes a conclusory assertion that the ALJ "erroneously failed to properly consider the effect of Plaintiff's documented numerous impairments combined with his extreme obesity" (*id.* at p. 16). Assuming this cursory argument is not deemed waived as underdeveloped, the undersigned concludes Mr. Rodriguez has not met his burden to show that the ALJ's express discussion of obesity at Steps Three and Four was noncompliant with SSR

---

[4] Social Security Ruling 96-8p provides that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record." SSR 96-8p, *Assessing Residual Functional Capacity in Initial Claims*, 61 Fed. Reg. 34474, 34477 (July 2, 1996) (emphasis in original).

[5] Social Security Ruling 19-2p provides that "[t]he combined effects of obesity with other impairment(s) may be greater than the effects of each of the impairments considered separately," and that the RFC should account for "the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, *Evaluating Cases Involving Obesity*, 84 Fed. Reg. 22924, 22925 (May 20, 2019).

19-2p or SSR 96-8p, or that it otherwise lacked the support of substantial evidence. (*See* Tr. 21, 23-30.) Accordingly, the undersigned finds the second assignment of error lacks merit.

In his third assignment of error, Mr. Rodriguez argues that the ALJ erred when she determined that the 20,500 jobs the VE found available constituted "a significant number of jobs in the national economy." (ECF Doc. 8, p. 18.) As explained in the Social Security Act:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A). The Act and implementing regulations explain that "work exists in the national economy when it exists in *significant numbers* either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a) (emphasis added); *see* 42 U.S.C. § 423(d)(2)(A). The term "significant number" is not defined, and the Sixth Circuit has noted that it is a "difficult task" to "enumerat[e] exactly what constitutes a 'significant number.'" *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Therefore, the question whether a "significant number" of jobs exist must be determined on a case-by-case basis and is subject to the substantial evidence standard. *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (citing *Hall*, 837 F.2d at 275); *see Norris v. Comm'r of Soc. Sec.*, 139 F.4th 541, 546-47 (6th Cir. 2025). Courts consider whether "the ALJ use[d] 'such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion.'" *Taskila*, 819 F.3d at 904 (citations omitted). Here, the VE testified to three available jobs, totaling 20,500 jobs in the national economy, and observed that those jobs were examples (suggesting the list was not exhaustive). (Tr. 62.) Plaintiff did not object to the VE's qualifications or testimony. (Tr. 61-64.) The ALJ evaluated the testimony in light of Mr. Rodriguez's level of disability,

education, and work experience (Tr. 31) and appropriately relied on the VE testimony to support her findings. *See Norris*, 139 F.4th at 547 (recognizing "[t]he testimony of a qualified [VE] may amount to substantial evidence.") (citing *Biestek v. Berryhill,* 587 U.S. 97, 105-08 (2019); *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 562 (6th Cir. 2022)); *Fry v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson*, 378 F.3d at 549. In this context, the undersigned concludes that the ALJ's finding of a "significant number" of jobs was supported by substantial evidence. Accordingly, the undersigned finds the third assignment of error lacks merit.

In his fourth assignment of error, Mr. Rodriguez claims that the ALJ erred when she did not incorporate certain limitations outlined in the consultative examiner's medical opinion into the RFC or explain why the opined limitations were not adopted. (ECF Doc. 8, pp. 20-22.) The ALJ analyzed the medical opinion of consultative examiner Donald Terrace, N.P., as follows:

> A physical consultative examination was completed in June 2025 by Donald Terrace, N.P. []. Examination stated the claimant had a BMI of 72, which he reported about a 40-pound weight gain in the past year []. Visual acuity was 20/25 in each eye and bilaterally []. His gait was normal with no assistive device, but he could not walk on toes or heels. The claimant could not squat. He was able to get up and out of the chair without difficulty []. Joints were stable, there was no swelling, and no edema []. Reflexes and sensation were normal. Range of motion was normal. Motor strength was 5/5 in the bilateral upper and lower extremities. Grip strength was 4/5 bilaterally, but he was able to button, tie, and zip without difficulty with each hand []. There were some inconsistencies in the opinions Mr. Terrace wrote in his report compared to the boxes he checked in the medical source statement form, so a request an addendum was submitted to clarify his opinion []. Mr. Terrace opined that the claimant, in an eight-hour workday, could stand for one hour, walk for one hour, and sit for six hours []. At one time, he said the claimant could sit for 30 minutes, stand 10 minutes, and walk 10 minutes []. The claimant could continuously carry and lift up to 10 pounds and frequently up to 20 pounds; and occasionally up to 100 pounds []. Mr. Terrace stated the claimant did not need a cane to ambulate; he could frequently use the right upper extremity for pushing/pulling; frequently use the left upper extremity for reaching in all directions, handling, fingering, and feeling, and occasionally push/pull due to weakness in both hands; occasionally engage in all postural limitations due to obesity and that he could not squat on exam; frequently work in extreme temperatures, vibration, humidity, dusts, fumes, and pulmonary irritants; occasionally work around hazards citing the claimant said his doctor told him not

> to drive; and he needed a handrail to use step citing the claimant could only walk 50 feet without a cane [].
>
> Mr. Terrrace's opinion was partially persuasive. The opinion regarding the claimant's sitting, standing, and walking abilities was generally persuasive since it was consistent with the overall record that supported limitation to work at the sedentary exertional level. This is evidenced by a statement from the claimant's treating physician just prior to the alleged onset date that said the claimant was capable of sedentary work and considering the claimant's testimony at the hearing such as him saying that his weight affected his mobility []. This is further supported by the findings on the exam showing that despite his high BMI, he had normal gait and stance, able to get on and off the table, had no assistive device, normal range of motion/strength of extremities, and no atrophy. This is also consistent with the records including the longtiduinal [sic] treatment records showing limited reports of MS flares, normal neurological and musculoskeletal exams, including normal gait, reflexes, and motor senses []. The nurse practitioner's opinion that the claimant occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl were also persuasive since it takes into account the claimant's obesity and reports of fatigue. However, despite offering an addendum to clarify some inconsistencies between the written opinion and the checklist form, Mr. Terrrace's addendum continued to have inconsistencies which limits the persuasiveness of the overall opinion. For example, Mr. Terrace stated in the written opinion that the claimant had full strength in the bilateral upper and lower extremities except for 4/5 bilateral grip strength, but the checklists said he had 4/5 strength in the bilateral knees, ankles, toes, wrists, thumbs, and fingers []. Therefore, the manipulative limitations offered by Mr. Terrace, as well as all other areas with inconsistencies, were not persuasive due to multiple inconsistencies.

(Tr. 28-29 (citations omitted) (emphasis added).) Without clear reference to specific limitations, but with possible references to sit/stand/walk limitations that do not add up to eight hours and a stated ability to "sit for 30 minutes" (*see* ECF Doc. 8, p. 21 ("If Plaintiff could not perform full time work or if he needed to switch positions every 30 minutes. . .")), Plaintiff makes a vague, conclusory argument that the ALJ "erroneously fail[ed] to include any of these opined limitations in her RFC" (*id.*). Assuming this argument is not deemed waived because it is vague and underdeveloped, the undersigned finds Mr. Rodriguez has not met his burden to show the ALJ failed to properly explain her reasons for rejecting certain limitations from NP Terrace's medical opinion, or to show that the ALJ's RFC findings lacked the support of substantial evidence. The ALJ explained that the adopted limitations were consistent with specified medical

records, but that internal inconsistencies "limit[ed] the persuasiveness of the overall opinion." (Tr. 28.) Accordingly, the undersigned finds the fourth assignment of error lacks merit.

## V. Recommendation

For the reasons set forth above, the undersigned recommends that the final decision of the Commissioner be **VACATED** and **REMANDED**, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation. On remand, the ALJ should clearly articulate the rationale supporting her Step Three findings, specifically including a finding as to whether Mr. Rodriguez's migraine headaches medically equaled a listing, and should ensure that those findings are supported by substantial evidence.

November 6, 2026

*/s/Amanda M. Knapp*
AMANDA M. KNAPP
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530 (6th Cir. 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).